CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 29 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN BECKER,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:07cv00157<br>)<br>) |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY<br>    Defendant. | ) By: Hon. Michael F. Urbanski<br>)     United States Magistrate Judge<br>)<br>) |

## REPORT AND RECOMMENDATION

Plaintiff John Becker ("Becker") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security ("Commissioner") denying Becker's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, ("Act"). This case was referred to the undersigned for report and recommendation. Following the filing of the administrative record and briefing, oral argument was held on September 27, 2007. As such, the case is now ripe for decision. The undersigned recommends reversing and remanding the decision of the Administrative Law Judge ("ALJ"), as the decision is not supported by substantial evidence.

Reversal and remand is appropriate for two reasons. First, the ALJ did not properly analyze and explain the weight given to the opinion of Becker's treating physician, Dr. Flynn. Second, while the ALJ relied upon testimony from the vocational expert ("VE") to support his Step Five decision, that testimony is inaudible and does not provide any basis to support the ALJ's decision.

## I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. § 404.1520 (2007); see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

2

claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C.A. § 423(d)(2)(A) (2007); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Becker was born on December 21, 1957 and is a high school graduate. (R. 16) Becker spent more than twenty years in the restaurant industry, most recently working as manager. (R. 16) Becker protectively filed an application for a period of disability and disability insurance benefits alleging an onset date of March 5, 2002. (R. 11) Becker's claim was initially denied on April 9, 2004 and upon reconsideration on September 30, 2004. (R. 11) An ALJ held a hearing in this matter on January 4, 2006, (R. 298-321), and issued a decision finding Becker not disabled on February 17, 2006. (R. 9-18) The Appeals Council denied Becker's request for review of the ALJ's decision, thus making the decision the final decision of the Commissioner on May 2, 2006. (R. 4-6)

Becker's medical records reveal complaints of lower back pain starting in March, 2001 through March, 2002, with numerous doctor visits during this time. (R. 200-244) Becker was diagnosed with degenerative disc disease with lumbar disc herniation at L5-SI. (R. 222) After Becker exhausted conservative treatment options, such as physical therapy and epidural injections, Dr. Flynn, a neurosurgeon, performed a laminectomy, diskectomy, and spinal fusion on March 5, 2002. (R. 226-29) From March, 2002 until October 3, 2002 Dr. Flynn examined Becker on multiple occasions to assess the success of the surgery. (R. 279-83) Throughout this time, Dr. Flynn noted that Becker's back pain continually improved with no post-operation complications. (R. 279-83) In fact, Becker returned to work on September 6, 2002. (R. 13)

3

During the October 3, 2002 visit, Dr. Flynn noted that Becker had returned to work and was working thirty hours per week. (R. 279)

Becker's successful recovery, however, would not last with his increased workload. Dr. Flynn examined Becker on December 12, 2002 and noted that he had been experiencing increasing back pain and suggested that Becker reduce his workload to twenty hours per week. (R. 278) On February 14, 2003, Dr. Flynn noted that Becker was unable "to tolerate the pace or long hours required for a restaurant manager" and suggested that he "seek alternative lifestyle and consider retirement." (R. 277) Dr. Flynn continued to see Becker approximately every six months or as needed through November 18, 2004, when he opined that Becker was "very limited in his ability to work" and that this was a permanent situation. (R. 268A)

In the February 17, 2006 decision, the ALJ found that although Becker suffered from a severe impairment, degenerative disc disease with lumbar disk herniation, the impairment was not severe enough to meet the listing requirements in Appendix 1, Subpart P, 20 CFR Pt. 404. (R. 14) The ALJ then found Becker maintained the RFC to perform a limited range of light work.[1] Specifically, the ALJ found Becker incapable of lifting and/or carrying more than 20 pounds occasionally and 10 pounds frequently; must sit and/or stand from time to time to alleviate symptoms of pain and discomfort; can sit no longer than thirty minutes and stand no

---

[1] Light work requires exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

more than an hour; and he can only occasionally bend, twist, and perform repetitive lifting. (R. 15) In making this determination, the ALJ found that Becker's impairment could be reasonably expected to produce the alleged symptoms, but that Becker's statements concerning the symptoms were not entirely credible. (R. 15)

Furthermore, the ALJ rejected the opinion of Dr. Flynn, the neurosurgeon who operated on and treated Becker for more than two years, claiming that his opinion was not consistent with the medical evidence of record and his own objective findings. (R. 16) Instead, the ALJ credited the opinions of three reviewing state agency physicians who opined that Becker could perform light exertional work. (R. 16) Dr. Kitay, whose primary specialty is obstetrics and gynecology, reviewed Becker's medical records on April 13, 2003. (R. 237) Dr. Kitay opined that his conclusions did not differ from the conclusions of a treating source, yet he concluded that Becker could occasionally lift twenty pounds and frequently lift ten pounds. (R. 231) This opinion, of course, contrasts from Dr. Flynn's instruction to Becker on December 12, 2002 that he avoid lifting. (R. 278) The form Dr. Kitay filled out explicitly asked the doctor to explain any discrepancy between his conclusions and those of a treating physician, yet he neglected to do so. (R. 236)

Dr. Brigety, another obstetrics and gynecology specialist, reviewed Becker's medical records on April 4, 2004 and reached the same conclusions as Dr. Kitay. (R. 245-252) Dr. Brigety also opined that his conclusions did not differ from those of a treating physician. (R. 251) Dr. Flynn, however, opined on August 14, 2003 that Becker needed to avoid prolonged sitting or standing, (R. 276), while Dr. Brigety opined that he could sit or stand about six hours in an eight hour workday, (R. 246), without explaining the discrepancy. (R. 251)

5

Finally, Dr. Bancks, a diagnostic radiologist, reviewed Becker's medical records on September 22, 2004, and came to the same conclusions as Drs. Brigety and Kitay. (R. 260-266) Dr. Flynn's examination on August 5, 2004, which Dr. Bancks says he relied upon, (R. 266), explicitly states that Becker cannot sit for longer than one half hour at a time. (R. 270) Yet Dr. Bancks found that Becker could sit for 6 hours in an eight hour day, (R. 261), and asserted that he relied upon the August, 2004 opinion of Dr. Flynn, which is in direct conflict with this finding. (R. 266)

The ALJ next determined that Becker could not perform any past relevant work as a restaurant manager or head cook, but that jobs exist in significant numbers in the national economy that Becker could perform. (R. 16-17) To make this finding, the ALJ solicited testimony from a VE who testified that a hypothetical person with Becker's RFC would be able to perform the duties of such representative occupations as routine office clerk, cashier II, booth or toll collector, small products assembler, and small products inspector with the numbers of these jobs being reduced to accommodate a sit/stand option. (R. 17) The ALJ relied upon this testimony to conclude that Becker could perform the representative duties of these jobs that exist in significant numbers in the national economy. (R. 18) The record, however, is devoid of any testimony from the VE corroborating the ALJ's finding as the VE's testimony was inaudible at the hearing.

### III.

The undersigned recommends that the case be remanded to the ALJ for further administrative proceedings consistent with this report. The ALJ's decision cannot be said to be supported by substantial evidence from the record as presented, because the testimony from the

6

Case 7:07-cv-00157-SGW-mfu   Document 29   Filed 10/29/07   Page 6 of 11   Pageid#: 102

VE, which the ALJ relies upon to find that jobs exist in the national economy which Becker could perform, is almost entirely missing from the transcript of the hearing. Furthermore, the ALJ did not properly explain why he discredited the opinion of Becker's treating physician Dr. Flynn.

### A.

At the hearing on January 4, 2006 the ALJ asked the VE to testify and provide information as to the existence of jobs in the national economy that Becker could perform given his RFC. The transcript from the hearing does not provide the VE's response as it was inaudible. (R. 318) The ALJ subsequently relied upon this testimony to satisfy the Commissioner's burden at Step Five. (R. 17) Becker's attorney also questioned the ALJ, and again the substantive portion of the answer was inaudible. As such, the undersigned cannot find substantial evidence in the record to support the ALJ's decision that other jobs exist in the national economy that Becker can perform. See Russell v. Sullivan, 914 F.2d 1492 (4th Cir. 1990) (holding substantial evidence does not exist when critical testimony from a vocational expert is inaudible).

### B.

Becker argues that the ALJ failed to give appropriate weight to the opinion of his treating physician Dr. Flynn, and the undersigned agrees. An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527 (d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity

7

of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p.

The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

In this matter, the ALJ rejects the opinion of Dr. Flynn, who performed surgery on Becker and treated him for more than two years with frequent visits, because it is inconsistent with the medical evidence of record. (R. 16) Instead, the ALJ credits the opinion of three state reviewing physicians who did not examine Becker. (R. 16) All three state reviewing physicians claimed that their opinions were consistent with that of Dr. Flynn's in direct response to a question on the form each filled out. These opinions, however, are clearly inconsistent with the
8

relevant opinion of Dr. Flynn from Becker's last visit prior to the date of the individual reports. These unexplained inconsistencies, particularly when the form explicitly requests and provides space for such an explanation, do no constitute persuasive evidence sufficient to contradict Dr. Flynn's opinion. The ALJ's cursory statement regarding Dr. Flynn's medical opinion is not sufficient explanation as to why the opinion is being discredited. Dr. Flynn not only performed the surgery at issue, he also treated Becker for over two years subsequent to the surgery. The length and nature of the treating relationship between Dr. Flynn and Becker, the fact that Dr. Flynn is a neurosurgeon, and the fact that the only evidence that contradicts his opinion is from three non-examining physicians who claim to be in agreement with Dr. Flynn, cannot be said to be persuasive evidence worthy of discrediting his opinion. The undersigned finds that the ALJ did not fulfill his statutory obligation to consider all the relevant medical evidence and to explain the weight given to such evidence. Perry v. MYNU Coal, Inc., 469 F.3d 360, 363-64 (4th Cir. 2006) (citing Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997)). The undersigned recommends that this case be remanded for further consideration consistent with this report.

Further, there appear to be other inconsistencies in the ALJ's decision. For example, the ALJ claims that he accepted the findings of these three non-examining physicians in crafting his RFC, (R. 16), but that does not appear to be the case. Indeed, on page 15, the RFC adopted by the ALJ contains limitations specified by Dr. Flynn and not those asserted by Drs. Kitay, Brigety, and Bancks. Specifically, the ALJ found that Becker could not lift 20 pounds occasionally and 10 pounds frequently, he could not sit for longer than thirty minutes, and that he would have to sit and/or stand from time to time to alleviate pain, all limitations that the non-

9

treating sources did not find. (R. 15) On the next page of the decision, however, the ALJ rejects Dr. Flynn's opinion that Becker cannot return to the work force and accepts the opinions of Drs. Kitay, Brigety and Bancks that Becker can perform light exertional work, in contrast to the earlier RFC. On page 17, the ALJ, in discussing the opinion of the VE, does not use an RFC for light work, instead using the full range of sedentary work. These apparent discrepancies in the ALJ's decision need to be reconciled on remand.

### IV.

For the foregoing reasons, the undersigned concludes that the ALJ failed to meet the Commissioner's burden at Step Five that jobs exist in the national economy that Becker could perform. Because the transcript of the administrative hearing reflects that the testimony of the VE was inaudible, there is no way for a reviewing court to assess whether the testimony satisfies the substantial evidence test. Additionally, the ALJ failed to properly analyze and weigh the opinion of Dr. Flynn, Becker's treating physician. Accordingly, the undersigned recommends that the defendant's motion for summary judgment be denied and the case be remanded consistent with this recommendation.

The Clerk is directed immediately to transmit the record in this case to the Hon. Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual

recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

**ENTER:** This 29 day of October, 2007

/s/ Michael F. Urbanski
Hon. Michael F. Urbanski
United States Magistrate Judge